IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THORNTON FOREHAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:14-cv-207-WHA |
| | ) | |
| | ) | (WO) |
| C.S. KEARLEY, Deputy, in his individual | ) | |
| capacity and official, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This cause is before the court on Defendant Deputy Sheriff C.S. Kearley's Motion for Summary Judgment (Doc. # 35), filed on January 12, 2015. Also before the court are Plaintiff Thornton Forehand's Response to the Motion (Doc. # 42), and Defendant's Reply thereto (Doc. # 43). The Plaintiff originally sued Elmore County and the the Elmore County Sheriff Department, along with Deputy Kearley, for claims including assault and battery, negligence, and wantonness, all arising from a March 29, 2012 arrest of the Plaintiff for criminal littering. Following the court's order of June 5, 2014 (Doc. # 21) dismissing many of the claims, the only remaining claim is for the use of excessive force in violation of the Fourth Amendment, brought pursuant to 42 U.S.C. § 1983. Deputy Kearley ("Defendant") is the only remaining Defendant.

The Defendant filed an initial Motion for Judgment on the Pleadings, or in the alternative, Motion for Summary Judgment, on November 14, 2014. The sole basis for that Motion was the fact that the Plaintiff had mislabeled his excessive force claim as arising under the Fourteenth Amendment instead of the Fourth Amendment. The court extended various deadlines in the case

1

to provide an opportunity for the Plaintiff to amend his Complaint, and for the Defendant to file another dispositive motion in response. (Doc. # 31.) Both parties took advantage of those opportunities. For the reasons discussed below, the Motion for Summary Judgment is due to be GRANTED.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A)–(B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in its favor.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant, the Plaintiff:

The Plaintiff was arrested at his home on March 29, 2012.  Elmore County law enforcement officers, including the Defendant and Sheriff Bill Franklin, went to the home because of a report of wooden boards with nails sticking out laid across Hancock Road, which is adjacent to the Plaintiff's property.[1]  The Plaintiff has disputed the fact that Hancock Road is a public road since a 1991 state court ruling declaring it to be so.  He maintains that he made the road, and that road crews working there stir up dust when they scrape the road.  He has told the road crews not to scrape the road because of the dust, and because he believes the road is not public.  He also finds that his house fills up with dust when drivers exceed the speed limit on the road.

When the Defendant arrived at the property on March 29, he hammered the nails down so they would lie flat instead of sticking up.  According to a dispatch log record, the Plaintiff

---

[1] Sheriff Franklin and the deputies believed that the Plaintiff had placed the boards with nails across the road based on the Plaintiff's past behavior and reports they received.  The Plaintiff denied having placed the boards with nails in the road on March 29, 2012, and only admitted to placing "blocks" in the road in the past so that people would slow down. (Doc. # 36-1 at 27:1, 31:14–32:2.)  The court takes the Plaintiff's allegations that he did not place the boards with nails in the road on March 29, 2012 as true, and notes that whether he did place them there or not does not affect the legal analysis of his excessive force claim.

3

threatened to meet Sheriff Franklin and the deputies in his driveway with a firearm if they came to arrest him. Eventually, the Defendant and two other deputies went to the Plaintiff's front door. The deputies knocked, and after the Plaintiff opened the door, they used some force to bring him outside so they could handcuff and arrest him, including putting him on the ground to do so.[2] The Plaintiff recalls that he was "hit" with something, perhaps hands or fists, and that he was beaten. As the deputies put the Plaintiff in a police car, he told them it was painful to have his arms behind his back. The Plaintiff had previously been injured when he was run over by horses in a serious incident near his home. That accident caused extensive injuries to his right shoulder, his right hip, and his back, and he was taken by helicopter to a hospital. Because of the horse incident, the Plaintiff experienced pain when the deputies handcuffed his hands behind his back. After he told them about the shoulder injury, the deputies unfastened the Plantiff's handcuffs and cuffed him again with his hands in front of his body instead of behind him.

The deputies took the Plaintiff to the station, and after about eight hours they brought him back to his home. Following the arrest, the Plaintiff continued to feel pain from injuries to his back, a rib, and his shoulders. His shoulders continued to bother him because the deputies twisted his arms in order to handcuff him. The only force the deputies used against the Plaintiff occurred during the process of placing him under arrest and handcuffing him. None of the excessive force alleged in the Complaint occurred after the Plaintiff was handcuffed and in the police vehicle.

---

[2] The Plaintiff does not recall which deputy or deputies used force on him, and could not identify the Defendant when he was present at the Plaintiff's deposition. (Doc. # 36-1 at 22:2–23:4.) The Defendant stated in his affidavit that he, along with Deputies B.J. Wilson and J.K. Wall, entered the Plaintiff's residence, held him against a wall, and handcuffed him. (Doc. # 36-2 at 2–3 ¶¶ 2–3.) The Defendant further stated that the only contact he had with the Plaintiff was at the residence. (*Id.* at 3 ¶ 4.) In the facts described, the court has used the Plaintiff's testimony that he was brought outside, rather than the Defendant's testimony that the Plaintiff was arrested inside the residence. Based on the Defendant's statement, and in order to read the record in the light most favorable to the Plaintiff, the court assumes in this opinion that the Defendant participated either directly or indirectly in the events that surrounded the arrest of the Plaintiff.

## IV. DISCUSSION

### A. Qualified Immunity Burden of Proof

The Defendant has raised the defense of qualified immunity.  Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir. 1991).  "Qualified immunity protects government officials from liability for civil damages unless they violate a statutory or constitutional right that was clearly established at the time the alleged violation took place." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013).  It shields from litigation "all but the plainly incompetent or one who is knowingly violating the federal law."  *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013).

The threshold issue for qualified immunity eligibility is whether the Defendant was acting within his discretionary authority at the time of the alleged violation.  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  If he was, then the burden shifts to the Plaintiff to show that the Defendant is not entitled to qualified immunity.  *Id.*  Here, the parties do not dispute whether the Defendant was acting within his discretionary authority when he and the other deputies arrested the Plaintiff.  Multiple Eleventh Circuit decisions have also acknowledged that making arrests is an activity squarely within a police officer's discretionary authority.  *See, e.g.*, *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) ("It is undisputed that Officers Shanley and Lovett were acting within their discretionary authority while tracking and arresting Edwards."); *Lee*, 284 F.3d at 1194 ("In this case, there can be no doubt that Ferraro was acting in his discretionary capacity when he arrested Lee.").  The court finds the Defendant was acting in his discretionary authority when he arrested the Plaintiff.  Therefore, the court will proceed to the required two-step qualified immunity analysis, keeping in mind both that the burden of

persuasion is on the Plaintiff, and that the record must be construed in the light most favorable to him.

### B. Qualified Immunity Analysis

To determine whether the Defendant is entitled to qualified immunity, the court must undertake "the following two-pronged inquiry: (1) whether the facts that [the Plaintiff] has shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the [D]efendant's alleged misconduct." *Gilmore*, 738 F.3d at 273 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).[3]  Pursuant to Supreme Court precedent, the inquiry may be conducted in whichever order best suits the instant case, as district courts and courts of appeals are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.  Here, the court will first consider whether the facts shown by the Plaintiff establish a constitutional violation.

#### 1. The Plaintiff has not satisfied his burden of establishing a constitutional violation.

The Plaintiff alleges in his Amended Complaint that the Defendant "used excessive force in violation of the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983 by twisting the Plaintiff's arm and forcing him to the ground, causing him bodily injury." (Doc. # 32 at 2–3 ¶ 11.)  The court finds that the facts as shown in the record, construed in the light most favorable to the Plaintiff, establish no constitutional violations.

The inquiry into whether the Defendant used excessive force in violation of the Fourth Amendment is governed by the "objective reasonableness" standard. *Graham v. Connor*, 490

---

[3] The court notes that it is Plaintiff's burden to show "both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010).

U.S. 386, 399 (1989).  The issue must be considered in light of the "totality of the circumstances" and "from the perspective 'of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014) (quoting *Graham*, 490 U.S. at 396).  This analysis "allow[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396–97.

Factors relevant to the excessive force inquiry include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Lee*, 284 F.3d at 1198 (quoting *Graham*, 490 U.S. at 396).  The extent of any resulting injuries is not dispositive because "reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time."  *Lee*, 284 F.3d at 1200 (quoting *Rodriguez v. Farrell*, 280 F.3d 1341, 1353 (11th Cir. 2002)) (internal quotation marks omitted).  Additionally, force used incident to arrest is more likely excessive if it happens "after the arrest [has] been fully effected, the arrestee completely secured, and all danger vitiated."  *Lee*, 284 F.3d at 1199–1200 (collecting cases where qualified immunity was found when force was used before or during an arrest, as opposed to after the arrestee was secured).

In this case, the court will divide the allegedly excessive force into two categories for analytical purposes.  First, the Plaintiff has alleged the Defendant used excessive force in twisting his arm to handcuff him.  Second, the Plaintiff has also alleged that the Defendant "forc[ed] him to the ground" and caused injury.  (Doc. # 32 at 2–3 ¶ 11.)  The court will also

7

consider as part of the second category the Plaintiff's testimony at his deposition that during his arrest he was "hit" or "beat up" with fists or hands. (Doc. # 36-1 at 20:3–18.)[4]

The court finds that twisting the Plaintiff's arm to handcuff him was not a violation of the Fourth Amendment. The Eleventh Circuit has "recognize[d] that the typical arrest involves some force and injury." *Rodriguez*, 280 F.3d at 1351. In particular, "[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." *Id.* (collecting cases where painful handcuffing was found to lie within the bounds of reasonable force if injuries were minimal). Where the injuries are not minimal, that fact does not change the analysis if the arrestee had a preexisting condition of which the arresting officer was unaware. *See id.* In *Rodriguez*, the arresting officer used a technique that "is a relatively common and ordinarily accepted non-excessive way to detain an arrestee," but aggravated the arrestee's preexisting shoulder condition. *Id.* The resulting injury was so severe that the arrestee had to have multiple surgeries and eventually his arm was amputated below the elbow. *Id.* Nonetheless, the panel found that absent evidence that the arresting officer knew about the preexisting condition at the time of the arrest, the officer's actions did not constitute excessive force. *Id.* at 1353.

Here, the Plaintiff's lingering injuries from the horse accident are analogous to the preexisting condition in *Rodriguez*. There is no evidence the Defendant or any of the other deputies were aware of the Plaintiff's condition. When the Plaintiff made them aware of it, the deputies re-handcuffed him so that his arms were in front of his body instead of behind it. (Doc. # 36-1 at 21:9–16.) Based on the evidence, the court finds the Defendant did not use excessive force in the process of handcuffing the Plaintiff.

---

[4] In noting the page number of the Plaintiff's deposition, the court refers to the numbering in the document itself, rather than the page numbers assigned after filing.

The Plaintiff has similarly not carried his burden to show that any hitting or force used to bring him to the ground was unreasonable and therefore excessive. As instructed by the Supreme Court and the Eleventh Circuit, the court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Lee*, 284 F.3d at 1198 (quoting *Graham*, 490 U.S. at 396). One of these factors weighs in the Plaintiff's favor while the other two work against him.

First, the "severity of the crime" factor does not support an extensive use of force in this case. The Plaintiff was arrested for criminal littering, which while serious, is not in the category of the most severe crimes. However, the other two factors weigh in favor of the use of some amount of force against the Plaintiff during his arrest. The evidence shows that the Defendant and the other deputies likely had some objectively reasonable concern about their own safety.[5] The Defendant did submitted a dispatch log record indicating that the Plaintiff threatened to Sheriff Franklin that he would "meet [them] at the driveway" with a firearm. (*Id.* at 59.)[6] The Plaintiff also acknowledged that he was "angry" that he was being arrested. (*Id.* at 35:3–8.) When asked whether he was "fighting" the deputies, the Plaintiff said he "didn't want them twisting [his] arm and stuff," without answering the question either affirmatively or negatively. (*Id.* at 22:8–12.)

Considering the totality of the circumstances, the court cannot conclude that the Plaintiff has shown that the Defendant used excessive force in effecting the arrest. At a minimum, the

---

[5] The Defendant testified in his affidavit that the Plaintiff tried to shut the door on the deputies when they knocked, and that they observed a shotgun near the door of the Plaintiff's home once they were inside. (Doc. # 36-2 at 3 ¶ 3.) He further stated that he and the other deputies took the actions they did "for [their] safety." The Plaintiff testified that he did not have any firearms in the front room of his home when he was arrested. (Doc. # 36-1 at 24:1–3.) Therefore, the court disregards the shotgun by the door because it must take the Plaintiff's testimony as true.

[6] The court notes that the Plaintiff has not objected to the submission or consideration of this evidence.

9

evidence shows the Plaintiff was angry about being arrested.  The dispatch log records indicate he made some type of threat to the Sheriff involving a firearm.  The allegations that the Defendant or the other deputies hit the Plaintiff and forced him to the ground are not specific or detailed enough to indicate that the force used was excessive in light of the officers' concerns about their safety.  Furthermore, both parties agree that no objectionable force was used after the arrest was complete, either during transport or while the Plaintiff was detained.  Force used on an arrestee is more likely to be excessive and violate the Constitution when used after the arrestee has been handcuffed or otherwise subdued.  *Lee*, 284 F.3d at 1199–1200.

This analysis and conclusion is consistent with at least one district court opinion with similar facts.  In *Montgomery v. Warren County*, police officers responded after a vehicle fled the scene of a hit-and-run accident.  No. 5:11-CV-00004-DCB, 2013 WL 3776937, at *5 (S.D. Miss. July 17, 2013), *aff'd*, 554 F. App'x 329 (5th Cir. 2014).  After stopping the vehicle they followed the driver of the car, the plaintiff in the suit, into the woods.  The evidence indicated that in the process of arresting the plaintiff, the police officers involved tased him at least once or twice, and that the plaintiff either fell or was struck on his head.  In analyzing the evidence and ultimately deciding that qualified immunity applied, the district court reasoned:

> [The plaintiff] never claims that he ceased to struggle with the Deputies at any point before they were able to subdue him by using the taser or even by "hitting" him. The Defendants handcuffed him *after* they allegedly punched or hit him. This fact corroborates the Deputies' claim that they only used force necessary to restrain him. Montgomery's vague accusations based upon his subjective belief, unsupported by any other evidence in the record, are insufficient for the Court to conclude that Montgomery has carried his burden of showing that no reasonable deputy could have believed that the Defendants' actions were proper.

*Id.* at 6 (emphasis in original).  Here, much like in the *Montgomery* case, the evidence includes vague allegations that the Plaintiff was hit, "beat up," and thrown to the ground in the course of the arrest.  Nowhere does the Plaintiff allege that any force was used after

10

he was handcuffed. As in *Montgomery*, the court cannot conclude based on the record before it that the Plaintiff has satisfied his burden to show that the Defendant committed a constitutional violation.

> **2. Even if the record indicated a possible constitutional violation, the Defendant would be entitled to qualified immunity because the right violated was not clearly established.**

While the court has found that the Plaintiff did not satisfy his burden to show a constitutional violation, it notes that even if he had shown such a violation, the right in question was not clearly established and therefore qualified immunity would nonetheless apply.

A right is considered clearly established "when, at the time of the challenged conduct, '[t]he contours of [a] right are sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (alterations in original). As the Supreme Court has explained, "[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* The Eleventh Circuit has noted that a constitutional right can be shown to be "clearly established" in three ways:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (internal citations omitted). The Supreme Court has also instructed courts "not to define clearly established law at a high level of generality," as the "crucial question [is] whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, 134 S. Ct. at 2023 (citing *Al-Kidd*, 131 S. Ct. at 2074) (internal quotations omitted).

In this instance, the right allegedly violated cannot be shown to be "clearly established" either by "a broad statement of principle" in the law or because it constituted "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis*, 561 F.3d at 1291–92.  The excessive force standard of "objective reasonableness" is highly dependent on the specific circumstances of a given case, as discussed above.  Furthermore, the Defendant's conduct was certainly not "so egregious" that a constitutional right was clearly violated absent any case law.  The record indicates that any force used was only inflicted before the Plaintiff was handcuffed, and that the Defendant or one of his colleagues handcuffed the Plaintiff's hands in front of his body instead of behind it after he complained of pain.

The only remaining avenue to show that the right as issue was clearly established, then, is "case law with indistinguishable facts clearly establishing the constitutional right." *Id.*  In this instance, if such case law exists the Plaintiff has not brought it to the court's attention, nor has the court found such case law on its own.  In fact, the court is aware of one case with close facts, *Montgomery v. Warren County*, which indicated that the Defendant did not violate any of the Plaintiff's constitutional rights by hitting him or beating him in the process of handcuffing him.  *Montgomery*, 2013 WL 3776937, at *5.  Keeping in mind that it is the Plaintiff's burden to show that the Defendant violated a clearly established constitutional right,[7] and that the record has been interpreted in the light most favorable to the Plaintiff, the court finds that even if the evidence had indicated the violation of a constitutional right, that right was not clearly established as is required to overcome the defense of qualified immunity.  Because the

---

[7] The Plaintiff did not make any argument directed to the issue of qualified immunity or whether the violation alleged was of a clearly established right.

Defendant is entitled to the protection of qualified immunity, the Motion for Summary Judgment is due to be GRANTED.

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED that the Motion for Summary Judgment (Doc. # 35) is GRANTED.

A separate Judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 3rd day of February, 2015.

    /s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE